IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) HARLAN HARTSFIELD, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>(1) FARMERS INSURANCE COMPANY, )<br>INC., a foreign corporation d/b/a )<br>Farmers Insurance Group, and )<br>(2) FARMERS INSURANCE EXCHANGE,)<br>)<br>Defendants. ) | Case No. CIV-10-585-C |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Defendants, Farmers Insurance Company, Inc. and Farmers Insurance's (hereinafter collectively referred to as "Defendants") Motion for Summary Judgment established and Plaintiff admitted his homeowners policy: (1) did not insure his roof against any loss or damage consisting of or composed of wear and tear and (2) specifically excluded loss or damage directly or indirectly caused by, arising out of, or resulting from faulty, inadequate or defective maintenance, repairs, manufacture or construction or wear and tear. Plaintiff and his expert admit Plaintiff's roof had rows of shingles that were improperly installed on the roof as they were not nailed properly to the decking. Plaintiff's expert agreed Plaintiff's homeowners policy excludes damage caused by improper construction and installation. Plaintiff was paid for all damage on his roof caused by a covered loss, here hail. Defendants agree damage caused by hail is covered under the plain language of Plaintiff's policy. It is Plaintiff's leap from a covered loss for hail damage means a covered loss for damage caused by improper installation of the shingles and wear and deterioration damage that is illogical. The only insured loss was the hail damage. Plaintiff's Response Brief does not provide any evidence, from any source, that Plaintiff's entire roof needed to be replaced as a direct result of

hail from the February 10, 2009 storm. In fact, Plaintiff's expert testified she cannot say whether Plaintiff's entire roof needs to be replaced or only spot repaired.

Plaintiff does not question the timeliness of Defendants' investigation of his claim. Plaintiff's only complaints are Defendants followed the plain and ordinary meaning of his policy and did not pay for damage directly or indirectly caused by, arising out of, or resulting from faulty, inadequate or defective maintenance, repairs, manufacture or construction and/or wear and tear. Plaintiff contends Defendants "disregarded" Plaintiff's "experienced roofer's observations". The only roofer who inspected Plaintiff's roof was Dustin Cagle. Dustin Cagle's "experienced" observations were the result of *six months* of estimating and bidding jobs for All American Roofing. According to Field Trainer VanVactor, Dustin Cagle never pointed out any hail damage while they were on Plaintiff's roof. See Exhibit 1, deposition of Darin VanVactor, pg. 31, l. 21 to pg. 32, l. 18. Other than Dustin Cagle testifying All American Roofing replaced the roof of **one** of Plaintiff's neighbors, there is absolutely no evidence any other house in Plaintiff's neighborhood was replaced as a result of the February 2009 storm. Beside Plaintiff, Defendants did not have any other insured in Plaintiff's neighborhood submit a claim for roof damage with a February 10, 2009 date of loss. The undisputed facts when viewed in a light most favorable to Plaintiff support summary judgment in favor of Defendants on Plaintiff's contract, bad faith and punitive damage causes of action.

### THE ONLY COVERED LOSS TO PLAINTIFF'S ROOF WAS DAMAGE FROM HAIL.

A subtle obfuscation employed by Plaintiff is references to the "covered loss" in arguing all costs incurred by Plaintiff are to be indemnified at replacement cost. However, what contractual indemnification did Plaintiff purchase? Plaintiff admits his homeowners policy did not insure against any loss or damage consisting of or composed of wear and tear and specifically excluded

loss or damage directly or indirectly caused by, arising out of, or resulting from faulty, inadequate or defective installation and repairs.  Here, we have damage to Plaintiff's roof caused by improper installation of the shingles and wear and deterioration.  The way the policy is structured, an insured does not get to the replacement cost loss settlement provision until the insured has a "covered loss".  The improperly installed and worn and deteriorated shingles are not a "covered loss".  If the damage is not covered under the policy, there is not a loss to settle and the loss settlement provision is inoperative.

      Plaintiff appears to recognize this structure in first citing to the insuring agreement which provides that only accidental direct physical loss is insured.  Plaintiff's roof sustained minor hail damage which is not excluded by the policy.  Plaintiff's "covered loss" is the hail damage.  Plaintiff's argument that if the loss is covered, Defendants owe to replace the entire roof, is incomprehensible.  Defendants agree they owe for the entire covered loss.  If Plaintiff's argument was valid, Defendants would owe every insured for a new roof if one shingle was damaged and it could not be replaced or repaired, for whatever reason.  The *only* "covered loss" which opens the loss settlement door is the covered hail damage, not the excluded faulty installation of the shingles and the wear, tear and deterioration.  The faulty and inadequate installation of the shingles as well as the wear, tear and deterioration is not covered and does not get to pass through the loss settlement door for payment at replacement cost.

      Plaintiff claims he should be afforded the coverage he reasonably expected under the policy.  If Plaintiff had read his policy just once, he would have been aware of the coverages and exclusions.  The reasonable expectation doctrine does not allow an insured to never read his policy and then claim ignorance of its content in an effort to obtain coverage specifically and unambiguously

excluded in the policy. Oklahoma law provides that an applicant for insurance, who accepts a policy, the provisions of which are plain, clear and free from ambiguity is chargeable with knowledge of its terms and legal effect. *National Fire Ins. Co. of Hartford v. McCoy*, 239 P.2d 428, 430 (Okla. 1951); *see also Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp.2d 1272 (N.D. Okla. 2006) (It is well established under Oklahoma law that insureds have a duty "to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and, having failed or neglected to do so, they are estopped from denying knowledge of its terms or conditions.")

Plaintiff's reasonable expectations of coverage cannot create coverage over and beyond the terms of the policy. In *Max True Plastering v. United States Fidelity & Guaranty Co.*, 912 P.2d 861 (Okla. 1996), the Oklahoma Supreme Court recognized that a reasonable expectations doctrine should only apply to cases where (1) the policy language is ambiguous; or (2) situations where the policy contains exclusions masked by technical or obscure language; or (3) hidden exclusions. *Id.* at 870. Before the doctrine will apply, the policy language must be ambiguous and there must be something more than a subjective and uncommunicated expectation of coverage. The doctrine is simply inapplicable where the language of the policy is, as here, clear and unambiguous. Plaintiff has not submitted any evidence the alleged hail damage to his roof could not be repaired with the policy benefits paid by Defendants. As such, Defendants are entitled to summary judgment on Plaintiff's breach of contract claim.

### DEFENDANTS' HANDLING OF PLAINTIFF'S CLAIM WAS REASONABLE.

The only claims handling issue asserted by Plaintiff to defeat Defendants' summary judgment on the bad faith cause of action is CR Steward and Mr. VanVactor ignored the findings of an experienced roofer, Dustin Cagle in assessing the nature and extent of hail damage on

Plaintiff's roof. To support these arguments, Plaintiff contends Defendants did not consider the "significant damage to other homes in the area". In reality, it is only one home in the area that received a new roof according to Dustin Cagle. The age of that roof, the type of shingles on that roof, the direction of the roof slopes, and the amount, if any, of tree coverage are unknown. To say the house next door received a new roof therefore Plaintiff was entitled to a new roof is illogical. Each roof and claim must be judged and evaluated on its own merits.

Similarly, the length of time Plaintiff had been insured with Farmers Insurance Company, Inc. and the fact Plaintiff had just been offered to renew his policy are of no consequence to whether Plaintiff's roof sustained hail damage or whether Defendants' conduct in handling Plaintiff's roof claim was reasonable. Underwriting functions including an offer of renewal cannot be the basis of a bad faith cause of action. *Claborn v. Washington Nat'l Ins. Co.*, 1996 OK 8, 910 P.2d 1046, 1051 (controlling Oklahoma law holds conduct relating to the sale, issuance, discontinuance or non-renewal of an insurance policy will not give rise to an action for breach of the duty of good faith and fair dealing); *Hays v. Jackson Nat'l Like Ins. Co.*, 105 F.3d 583 (10th Cir. 1997) (held a bad faith claim can only be brought for "wrongful denial of a claim" and will not lie for alleged damages stemming from the issuing and selling of an insurance policy); *Stanley v. Farmers Ins. Co., Inc.*, 2006 WL 3300461 (W.D. Okla. 2006) (held the plaintiffs could not maintain a bad faith claim based upon the insurer's conduct in attempting not to renew the plaintiff's homeowners policy).

Other than unsubstantiated statements, Plaintiff has failed to illustrate the handling of his claim was unreasonable or at a minimum, not a "legitimate dispute". The duty of good faith and fair dealing is not breached if the insurer refuses to pay a claim or litigates a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim, and the insurer's position is

reasonable and legitimate. *Christian v. American Home Assur. Co.*, 577 P.2d 899 (Okla. 1978). Here, Defendants handling of Plaintiff's claim was reasonable and its position was legitimate. Plaintiff reported his claim four months after the February 2009 storm. CR Eads inspected Plaintiff's roof the following day. CR Eads performed test squares to determine the existence of hail damage. See Defendants' Exhibit 5 to its Motion for Summary Judgment, photographs from CR Eads). CR Eads paid Plaintiff to replace the soft metals on the roof including the furnace vents, power vent covers, copper panel and gutters. The only damage CR Eads observed on Plaintiff's roof that he did not pay to replace or repair was the damage caused exclusively by the improper installation of the shingles (not nailed properly to the decking) and the damage caused exclusively by wear, tear and deterioration.

Over two months later (August 20, 2009), Defendants received an estimate from All American Roofing to replace Plaintiff's entire roof at a cost of $32,520.12. Defendants immediately agreed to send out another claims representative for a second inspection of Plaintiff's roof. If Defendants were so set on denying Plaintiff's claim as Plaintiff contends, why did Defendants agree to send out a second claims representative to inspect Plaintiff's roof along with Plaintiff's contractor? At the second inspection, CR Steward, Mr. VanVactor and Dustin Cagle did not agree on the scope of hail damage on Plaintiff's roof. Plaintiff's claims handling expert, Diane Luther agreed, at a minimum, a few sections of shingles were not properly nailed to the decking. The report of Defendants' construction expert, Michael Berryman further outlines the extensive construction defects present on Plaintiff's roof. See Exhibit 2, Rule 26 Report of Mr. Berryman. Mr. Berryman's findings further supported the opinions and conclusions of CR Eads, CR Steward and Mr. VanVactor. Pursuant to the unambiguous terms of Plaintiff's policy, Defendants did not owe for

improperly and inadequately installed shingles. As such, Defendants did not owe to replace Plaintiff's entire roof since, at a minimum, "a few sections" of shingles were damaged exclusively by causes that were specifically excluded from coverage. Ms. Luther testified Plaintiff's policy excluded coverage for damage to the shingles caused by improper construction and installation and Defendants would not be obligated to pay for shingles that are loose from a construction defect. See Exhibit 3, deposition testimony of Ms. Luther, pg. 21, l. 9 to pg. 22, l. 13.

Plaintiff's reliance on the opinions of Ms. Luther are misplaced. Ms. Luther's testimony does not show Defendants' handling of Plaintiff's claim met the minimum level of culpability necessary for bad faith liability against an insurer to attach, which is more than simple negligence. *Badillo v. Mid-Century Ins. Co.*, 121 P.3d 1080, 1094 (Okla. 2005). Her main criticism of Defendants' handling of Plaintiff's claim was "Defendants cannot deny coverage for the entire roof because a few rows of shingles came loose because of faulty nailing when the roof otherwise has hail damage." Yet, she testified she cannot say the entire roof needs to be replaced or only spot repaired. See Exhibit 3, deposition testimony of Ms. Luther, pg. 22, l. 14-22. Her criticism of Defendants do not amount to unreasonable conduct. Ms. Luther never inspected Plaintiff's roof. *Id.* at pg. 10, l. 3-7. She relied exclusively on the fact the house next door received a new roof and the undated photographs in the possession of Dustin Cagle to opine the shingles on Plaintiff's roof had hail damage. All Ms. Luther can say with certainty is there were three different roofing analysis and one is more different than the next which is unusual. See Exhibit 3, pg. 22, l. 14-22. Clearly, there was a legitimate dispute over the nature and extent of hail damage to the shingles on Plaintiff's roof.

In 2006, before Plaintiff purchased the subject residence he had the roof inspected. See Exhibit 18 to Defendants' Motion for Summary Judgment. The results of that inspection were memorialized in an invoice from Able Roofing dated September 28, 2006. *Id.* The inspection comments revealed several areas on Plaintiff's roof were in need of repair due to ***loose shingles*** and ***raised nails***. *Id.* The invoice all indicated "NO" next to the words "WIND OR HAIL DAMAGE". The same loose shingles and raised nails were observed by CR Eads, CR Steward, Mr. VanVactor and expert Michael Berryman during their three inspections of Plaintiff's roof. Obviously, the February 10, 2009 storm did not create loose shingles and raised nails back on September 28, 2006. The more logical analysis of this undisputed evidence is Plaintiff's roof had loose shingles and raised nails on September 28, 2006 that were still present at the time of the February 10, 2009 storm. Both CR Eads and CR Steward observed loose shingles that were not properly nailed to the decking and were sliding down the roof.

The bottom line is Plaintiff is unhappy he did not receive a new roof. To say CR Eads, CR Steward and Mr. VanVactor's investigation, evaluation and payment of Plaintiff's claim was unreasonable and in bad faith defies common sense. CR Eads, CR Steward and Mr. VanVactor were thorough and precise in their inspection and evaluation of the damage on Plaintiff's roof and the end result was fair, reasonable and made in good faith. In the absence of "conflicting evidence from which different inferences may be drawn regarding the reasonableness of Defendants' conduct," Defendants are entitled to summary judgment on Plaintiff's bad faith claim.

### A DISAGREEMENT OVER HAIL DAMAGE DOES NOT WARRANT PUNITIVE DAMAGES

To award punitive damages, a jury must find by clear and convincing evidence that Farmers recklessly disregarded Plaintiff's rights from which malice and evil intent may be implied. *Badillo*

*v. Mid-Century Ins. Co.* 2005 OK 48, 121 P.3d 1080. Again, Plaintiff's reliance on underwriting issues to support his bad faith and punitive damage claims are misplaced. Collecting premiums and policy renewals are not claims handling functions and cannot be the basis for a bad faith or punitive damage cause of action. *Claborn v. Washington Nat'l Ins. Co.*, 1996 OK 8, 910 P.2d 1046, 1051. Once the underwriting issues Plaintiff interjected throughout his Response brief are weeded out, Plaintiff does not cite a single claims handling argument to refute Defendants' summary judgment on punitive damages. Plaintiff has not produced "competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent may be inferred." *Badillo* at 1106. The first inspection of Plaintiff's roof by Matt Eads was thorough and detailed. CR Eads completed test squares and did not find any hail damage to the shingles. CR Eads observed shingles that were not properly nailed to the decking which was causing them to slide or slough down the roof. CR Eads observed hail damage to the soft metals on Plaintiff's roof and paid Plaintiff $575.18 for those damages ($2,075.18 less Plaintiff's $1,500 deductible). At the second inspection, Dustin Cagle was present and discussed with CR Steward and Mr. VanVactor each other's opinions about the extent of hail damage on Plaintiff's roof. Plaintiff has not submitted any evidence Dustin Cagle was more right than CR Eads and Steward or Mr. VanVactor in assessing the hail damage on Plaintiffs' roof. Ms. Luther relied solely on the undated photographs in the possession of Dustin Cagle for her opinion in her report that "Farmers owes Mr. Hartsfield for a new roof". Interestingly, she testified at her deposition that she could not say whether Plaintiff's entire roof needed to be replaced or only spot repaired. See Exhibit 3, pg. 22, l. 14-22. Neither the testimony nor the Rule 26 Report of Ms. Luther (Plaintiff's Exhibit 8) satisfies the greater burden required to establish punitive damage liability. The undisputed material facts do not support a conclusion that Defendants' conduct in the

handling of his hail damage roof claim posed a "substantial unnecessary risk" of "serious injury".

### FARMERS INSURANCE EXCHANGE IS NOT LIABLE FOR BREACH OF CONTRACT.

Proposition IV of Defendants' Motion for Summary Judgment only addressed Plaintiff's breach of contract claim against Farmers Insurance Exchange, not his bad faith claim. Plaintiff's Response does not address Plaintiff's breach of contract claim against Farmers Insurance Exchange. In fact, Plaintiff's heading is "RESPONSE TO PROPOSITION IV: DEFENDANT FARMERS INSURANCE EXCHANGE IS A PROPER PARTY TO PLAINTIFF'S BAD FAITH CLAIM." Proposition IV of Defendants' Motion had nothing to do with the validity of Plaintiff's bad faith cause of action. Plaintiff admitted the subject policy was issued by Farmers Insurance Company, Inc. *See* Defendants' Undisputed Fact No. 2. As such, summary judgment should be entered in favor of Farmers Insurance Exchange on Plaintiff's breach of contract cause of action.

### CONCLUSION

The complete absence of evidence of any intentional, malicious, or oppressive conduct by Defendants is fatal to Plaintiff's bad faith claim. When the **undisputed material facts** are viewed in a light most favorable to Plaintiff, the only possible conclusion to be drawn is that Defendants complied with the terms of Plaintiff's policy when it paid Plaintiff for all hail damage on his roof and withheld payment for damage caused by inadequate installation of the shingles and wear and deterioration. This only possible conclusion entitles Defendants to judgment as a matter of law on Plaintiff's breach of contract, bad faith and punitive damage causes of action.

WHEREFORE, Defendants, Farmers Insurance Company, Inc. and Farmers Insurance Exchange respectfully request an Order of this Court granting judgment in their favor and against Plaintiff.

EDMONDS COLE LAW FIRM


BY: /s Sheila R. Benson
Greg D. Givens, OBA No. 10310
Sheila R. Benson, OBA No. 19050
7 S. Mickey Mantle Drive, Second Floor
Oklahoma City, OK 73104
Phone: 405/272-0322
Fax:    405/235-4654
*Attorney for Defendants,*
*Farmers Insurance Company, Inc. and*
*Farmers Insurance Exchange*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of June, 2011, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kevin Bennett
David Smith
414 N.W. 4th Street, Suite 200
Oklahoma City, OK 73102

-and-

Joe White, Jr.
Kent McGuire
WHITE & WEDDLE, P.C.
5532 N. Western
Oklahoma City, OK  73118
*Attorneys for Plaintiff*

/s Sheila R. Benson